[No. B061872. Second Dist., Div. Two. June 22, 1994.]

STEVE MOALLEM, Cross-complainant and Appellant, v. COLDWELL BANKER COMMERCIAL GROUP, INC., et al., Cross-defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976 and 976.1, the following portions of this opinion are certified for publication: the Introduction, part II(3) of the Discussion and the Disposition.

**COUNSEL**

Reznik & Reznik and Penny Grosz-Salomon for Cross-complainant and Appellant.

Munger, Tolles & Olson, Dennis E. Kinnaird, Lucy T. Eisenberg and Allison B. Stein for Cross-defendants and Appellants.

**OPINION**

**FUKUTO, J.—**

### INTRODUCTION

These are cross-appeals from a $1,430,937 judgment for negligence and breach of fiduciary duty, awarded to Steve Moallem, as assignee of his

corporations Midland Warehouse and Distribution, Inc., and Transmotor Express, Inc. (collectively Midland), against their real estate agents, Coldwell Banker Commercial Group, Inc., and Kent Williams (collectively Coldwell). The judgment stemmed from Midland's forfeiture of a warehouse property (the property), on which it had held a lease and option to buy, after Coldwell sublet the property for Midland in violation of the lease.

The issues on appeal concern additions or offsets to the judgment that the parties contend the trial court should have made. Coldwell contends that two payments which Midland and its bankruptcy estate received from other cross-defendants before trial should have been credited against the judgment, to avoid excessive or multiple recovery. On cross-appeal, Moallem contends that a similar payment to him should not have been deducted from his award, and that he should have been allowed additional prejudgment interest, and attorney fees. The latter contention raises the significant issue of whether, in light of Civil Code section 1717, Moallem may recover attorney fees for his successful tort action, under a contractual attorney fees provision that is broad enough to encompass tort claims but names only Coldwell as its beneficiary. This issue is addressed in the published portion of this decision.

We conclude that Coldwell's contentions with respect to the judgment are meritorious, but that Moallem's are not.

FACTUAL BACKGROUND *

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I.  COLDWELL'S APPEAL*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.  MOALLEM'S APPEAL

1., 2.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3.  *Attorney Fees.*

The brokerage agreement between Midland and Coldwell included a commission schedule which provided in part: "If broker [i.e., Coldwell] is

*See footnote, *ante*, page 1827.

required to institute legal action against Owner [i.e., Midland] relating to this Schedule or any agreement of which it is a part, Broker shall be entitled to reasonable attorneys' fees and costs."

After the jury rendered its verdict in favor of Moallem for negligence and breach of fiduciary duty but for Coldwell on Moallem's claim for breach of contract, both sides moved for an award of attorney fees by virtue of the quoted contractual provision and Civil Code section 1717 (hereafter section 1717).[1] The trial court ruled that there had been "no party prevailing on the contract" (§ 1717, subd. (b)), and therefore denied both requests for fees. Moallem, but not Coldwell, has appealed from that disposition.

In claiming entitlement to attorney fees, Moallem no longer seeks directly to invoke section 1717, which in terms allows fees only to "the party prevailing on the contract," in an "action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded . . . ." (§ 1717, subd. (a).)[2] In light of this plain language, the statute has consistently been held not to afford recovery of fees for tort claims arising out of or related to such a contract. (E.g., *Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 129 [158 Cal.Rptr. 1, 599 P.2d 83]; *Stout* v. *Turney* (1978) 22 Cal.3d 718, 730 [150 Cal.Rptr. 637, 586 P.2d 1228].)

---

[1] Section 1717 provides in pertinent part: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract. [¶] Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit. [¶] Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void. [¶] (b) (1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section. [¶] . . ."

[2] In the court below, Moallem contended that the tort causes of action were "on the contract," because they involved breaches of duties arising out of the contract. Moallem does not renew that particular argument here; he permissibly adduces a different legal rationale to be applied to the same facts. (Cf. *Palmer* v. *Shawback* (1993) 17 Cal.App.4th 296, 300 [21 Cal.Rptr.2d 575].)

Moallem instead relies primarily on a recent series of cases allowing attorney fees for tort claims where a contractual attorney fees provision was phrased broadly enough to cover such noncontractual claims. (*Xuereb* v. *Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338 [5 Cal.Rptr.2d 154] (*Xuereb*); accord, *Palmer* v. *Shawback, supra,* 17 Cal.App.4th 296; *Lerner* v. *Ward* (1993) 13 Cal.App.4th 155 [16 Cal.Rptr.2d 486]; *3250 Wilshire Blvd. Bldg.* v. *W.R. Grace & Co.* (9th Cir. 1993) 990 F.2d 487.) In all of those cases, however, the contract provisions that the courts enforced also provided for attorney fees to whichever party prevailed, whereas here the provision in question runs only in favor of Coldwell. Moallem thus occupies the difficult position of arguing that the "public policy" of reciprocity of contractual attorney fee provisions, which section 1717 appears to implement, should control a noncontractual case that is specifically beyond section 1717's ambit. Although we sympathize with Moallem's position, we conclude that, just as its reach exceeds the statute's grasp, to adopt it would overreach our judicial function.

Like the present case, the *Xuereb* line of cases all involved tort claims arising out of real estate sales transactions, in which the contract provided that attorney fees would be allowed to the prevailing party in any action "arising out of" the contract (or similar language). In each case, the court held that although the prevailing party could not claim attorney fees under section 1717—because the action in which it had prevailed had been in tort, rather than "on the contract"—the contract's "arising out of" or equivalent language extended beyond simply actions "on the contract," and embraced the tort claims that had been decided. Therefore, under authority of Code of Civil Procedure section 1021, which permits parties to contract for attorney fees, the prevailing party was entitled to an award of fees by dint of the contract itself.[3]

The attorney fees provision in Coldwell's contract with Midland extends to any "legal action . . . relating to" the contract. This language is broad enough to include tort claims of the type brought and won by Moallem here, just as in *Xuereb* and its progeny. Coldwell does not contend to the contrary. However, the critical difference between this case and the *Xuereb* cases is that in those cases the attorney fees provision specifically covered and benefited all parties to the contract, while in this case the provision specifically limits entitlement to attorney fees to Coldwell.

[3]Code of Civil Procedure section 1021 provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided."

This difference is dispositive. In the *Xuereb* cases, the contracts did provide for attorney fees for the party that sought them, and therefore such an award of fees was sanctioned by Code of Civil Procedure section 1021, which, again, leaves the recoverability vel non of attorney fees "to the agreement, express or implied, of the parties." But in this case, for better or worse, the agreement of the parties was that only Coldwell could obtain attorney fees for an action "relating to" the contract. Thus, in contrast to *Xuereb*, Moallem's present prayer for fees lacks support in the terms of the contract and, consequently, in Code of Civil Procedure section 1021.

Moallem contends, however, that the unilateral right to attorney fees in Coldwell's contract should be available to him too, by dint of what he perceives as "[t]he public policy of mutuality of remedy established by [section] 1717 . . . the public policy that unilateral attorneys' fees provisions should be bilaterally enforced." The existence of such a public policy cannot be denied. As noted by cases decided early in section 1717's existence, the purpose of the section was to advance "the policy of the state to protect the unequal bargaining power of the 'little man' in contracts of adhesion." (*System Inv. Corp.* v. *Union Bank* (1971) 21 Cal.App.3d 137, 163 [98 Cal.Rptr. 735]; see also *Coast Bank* v. *Holmes* (1971) 19 Cal.App.3d 581, 596-597 [97 Cal.Rptr. 30].) Indeed, given the ability of contracting parties to provide for attorney fees under Code of Civil Procedure section 1021, section 1717's "only effect is to make an otherwise unilateral right to attorney fees reciprocally binding upon all parties to actions to enforce the contract." (*Xuereb, supra*, 3 Cal.App.4th at p. 1342.)

Moallem's position sounds a strong call of fairness. The same policy considerations that underlie section 1717's provision for attorney fees for the prevailing party in a contract action, "whether he or she is the party specified [as entitled to recover fees] in the contract or not" (§ 1717, subd. (a)), would appear to warrant such a reciprocal allowance when the contract provides for fees not only "incurred to enforce that contract" (*ibid.*) but also on account of litigation, as here, "relating to" it.

But this is a judgment that is not ours to implement. In section 1717, the Legislature has prescribed with clarity that the public policy Moallem seeks to invoke presently applies only to attorney fees for contract actions, not tort claims. As *Xuereb* itself summarized, "By its terms . . . section 1717 has a limited application. It covers *only* contract actions, where the theory of the case is breach of contract, and where the contract sued upon itself specifically provides for an award of attorney fees incurred to enforce *that* contract." (*Xuereb, supra*, 3 Cal.App.4th at p. 1342.) Fairly or not, this restriction has for 25 years denied tort litigants the benefits of section 1717.

And so it must here. In this case the asymmetry of statutory rights between contract and tort litigants painfully appears, because Moallem could have invoked section 1717 had he prevailed on his contract claim instead of his tort claims. But that situation is a consequence only of the Legislature's enactment as it now stands. Although we can suggest that the statute be rewritten to take into account *Xuereb* and its progeny, we cannot perform that revision. The public policy underlying section 1717 may be clear. But a court is not free to advance the public policy that underlies a statute by extending the statute beyond its plain terms and established reach.

We therefore conclude that because the present contract provided for recovery of attorney fees for tort actions "relating to" the contract by Coldwell only, Moallem's request for fees under that contract was properly denied.

## DISPOSITION

The judgment is affirmed in part and reversed in part, with respect to the amount awarded. The superior court shall reduce that amount in conformity with this decision. The parties shall bear their own costs on appeal.

Boren, P. J., and Gates, J., concurred.

A petition for a rehearing was denied July 13, 1994, and the petition of appellant Steve Moallem for review by the Supreme Court was denied September 15, 1994.