KLINE, P. J., J., Concurring and Dissenting.
I agree Martin H. Baccaglio was properly determined to be the prevailing party and awarded attorney fees. As the majority explains, the award is justified under Code of Civil Procedure section 1032 (section 1032). The majority’s painful attempt to also justify the award on the basis of Civil Code section 1717 (section 1717) is not only wrong, and destined to exacerbate the confusion that already exists in this area of the law, but entirely gratuitous.
The “prevailing party” language of Civil Code 1717 was intended to apply and should only be applied to unilateral contractual attorney fee provisions. Since the contract in this case contains a reciprocal fee provision, the statute has no application.
I.
Significantly, section 1717 does not appear in the chapter of the Code Civil Procedure devoted to attorney fees generally (Code Civ. Proc., ch. 6, § 1021 et seq.), but in a portion of the Civil Code entitled “Obligations Imposed by Law,” the other provisions of which have nothing to do with attorney fees. Section 1717, which creates a substantive, not a procedural right, was only intended to rectify the inequitable situation in which a contract of adhesion authorizes fees only for the party that drafted the contract. As stated in Coast Bank v. Holmes (1971) 19 Cal.App.3d 581, 597, footnote 3 [97 Cal.Rptr. 30], “Civil Code section 1717, is part of an overall legislative policy designed to enable consumers and others who may be in a disadvantageous contractual bargaining position to protect their rights through the judicial process by permitting recovery of attorney’s fees incurred in litigation in the event they prevail." The heart of the statute is the provision that the prevailing party shall be entitled to reasonable attorney fees “whether he or she is the party specified in the contract or not.” (Italics added.) As appellate courts have reiterated on numerous occasions, even after the 1981 amendment of the statute, section 1717’s “only effect is to make an otherwise unilateral right to attorney fees reciprocally binding upon all parties to actions to enforce the contract.” (Xuereb v. Marcus & Millichap, Inc. (1992) 3 Cal.App.4th 1338, 1342 [5 Cal.Rptr.2d 154]; Honey Baked Hams, Inc. v. Dickens (1995) 37 Cal.App.4th 421, 426 [43 Cal.Rptr.2d 595].)
*1161 The limited purpose of section 1717 is explained in the most authoritative treatise as follows: “An attorneys’ fees provision is usually included by the party that drafts the contract, e.g., the installment seller, the mortgagee, the lessor or the payee of a note. It may provide for an award to either party to the contract . . . but it is sometimes designed for the sole benefit of the party with the greater bargaining power who offers a completed draft for the other party’s acceptance .... Giving full effect to the contract might mean that a buyer, mortgagor, lessee or maker of a note, though successful in the litigation, would not be entitled to an award of fees. [CR] The 1968 Legislature prohibited this practice by enacting C.C. 1717 . . . .” (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 162, pp. 683-684, italics added.)
The equitable issue upon which the majority focuses, which relates to the definition of “prevailing party,” is not the one the Legislature was concerned about when it enacted section 1717. The problem the statute addresses is not who prevailed but whether a party who unquestionably prevailed may nevertheless be denied fees on the basis of a one-sided attorney fee provision. The majority attributes to the drafters of section 1717 an intention to vest courts with broad equitable authority to cure a very different problem. In so doing, the majority has in effect converted section 1717 into a roving judicial authorization to do almost anything a judge desires with respect to awarding or denying attorney fees if the determination can be characterized as “equitable.”
Moreover, as applied to the determination of who is a “prevailing party,” the majority’s analysis renders section 1032 meaningless, despite the fact that the definition of “prevailing party” contained in section 1032 is clearly addressed to attorney fees generally. While a specific statute ordinarily takes precedence over a general statute where the two are in conflict, that is true only with respect to matters within the ambit of the specific statute; and, as explained, the more specific statute here (section 1717) cannot be deemed to apply to any case not involving a unilateral fee provision without ignoring the obvious and very limited legislative purpose. As a general rule of statutory construction, courts cannot create exceptions to rules of general application in the absence of an explicit legislative intention to do so. (Stockton Theatres, Inc. v. Palermo (1956) 47 Cal.2d 469, 476 [304 P.2d 7].)
The reason Civil Code section 1717 does not contain any expression of intent to supersede the definition of “prevailing party” contained in section 1032 is that Code of Civil Procedure section 1032 was enacted in 1986, after enactment of section 1717. It is elemental that if new provisions cannot be reconciled with earlier provisions of an entire scheme, the new provisions should prevail. “[Wjhere two statutes deal with the same subject matter, the *1162 more recent enactment prevails as the latest expression of legislative will.” (2B Sutherland, Statutory Construction (5th ed. 1992) § 51.02, p. 122, fn. omitted; Stafford v. L.A. etc. Retirement Board (1954) 42 Cal.2d 795, 798 [270 P.2d 12].)
The majority’s sleight of hand, which consists of the imputation to section 1717 of a legislative purpose that never existed, seems to me transparent. Thus, for example, the majority says that “the 1981 amendment plainly applies to bilateral fee provisions” (maj. opn., ante, at p. 1146) because the legislative materials accompanying the amendment do not explicitly state that it applies only to “unilateral fee provisions.” (Ibid.) The absence of such a declaration provides far too slender a reed to support the majority’s construct. There was no need for an explicit statement limiting application of the statute because the limitation is apparent. The curiosity is not that the legislative materials failed to state the obvious fact that the measure applied to unilateral fee provisions, which is clear on the face of the statute, but that they failed to provide any indication that it was not so limited, which the majority emphasizes. If the author of the measure had such a dramatic change in mind there certainly would have been some indication of it in the legislative history. The absence of such a statement of changed purpose is a stronger and much more useful indication of legislative intent than the absence of a statement that no change was intended, upon which the majority relies.
The majority attaches inordinate significance to the 1981 addition of the word “or” to section 1717. As the majority points out, the first paragraph of the statute originally read: “In any action on a contract, where such contract specifically provides that attorney’s fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, shall be entitled to reasonable attorney’s fees in addition to costs . . . .” (Stats. 1968, ch. 266, § 1, p. 578; italics added.) In amending section 1717 in 1981, the Legislature inserted the word “or” before the italicized phrase “the prevailing party.” From this ambiguous act (which probably reflected the common understanding that a party cannot benefit from the amended statute without prevailing in the action) the majority draws the remarkable conclusion that section 1717 no longer simply creates a new right in certain parties to certain contracts, but defines existing rights in parties who never needed the right section 1717 was designed to create. The important language in the quoted provision of section 1717 is not that which the majority seizes upon but the phrase “whether he is the party specified in the contract or not.” This original language, which statutorily transforms a unilateral attorney fee provision into a bilateral provision, has never been altered, and remains the key to a proper understanding of the reach of the statute.
*1163 Implicitly acknowledging that the 1981 amendment of section 1717 may not persuasively justify their expansive interpretation, my colleagues seek to buttress their position by pointing to the 1983 amendment. They do so in vain.
The 1983 amendment added the second paragraph of subdivision (a), which reads as follows: “Where a contract provides for attorney’s fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract.” The majority contends that the purpose of this new language, which was apparently designed to overrule Sciarrotta v. Teaford Custom Remodeling, Inc. (1980) 110 Cal.App.3d 444 [167 Cal.Rptr. 889], was “to provide a definition of ‘prevailing’ parties under section 1717 as those who actually prevail by obtaining a ‘greater relief.’ ” (Maj. opn., ante, at p. 1147.) This is simply not so. The opinion in Sciarotta did not purport to define a “prevailing party,” nor does the 1983 amendment. Both simply pertain to the type of contractual actions to which section 1717 applies. The majority misconstrues the legislative purpose. The legislative materials state that the amendment “would put both parties to a contract on equal footing,” and prevent “sly operators” from “blocking . . . clients from collecting attorneys’ fees on cases [the latter] won, not by redefining the definition of a “prevailing party,” but by redefining and expanding the application of section 1717 to “the entire contract” not just limited actions prescribed by the more powerful party. The 1983 amendment therefore does not, as the majority claims, illustrate any “continuing theme ... in favor of an equitable consideration of who should fairly be regarded as the winner.” (Maj. opn., ante, at pp. 1147-1148.)
All of the changes that have been made to section 1717 over time have been consistent with the original “theme” of the statute, which is to protect the weaker party to the contract from the more powerful party with respect to the right to recover attorney fees. The various definitions of “prevailing party” that may be found among the statutes of this state are neutral principles that do not affect the policy of section 1717 one way or the other.
To be sure, there is confusion in the case law as to the application of section 1717. Some appellate courts, including on one occasion the Supreme Court (Hsu v. Abbara (1995) 9 Cal.4th 863 [39 Cal.Rptr.2d 824, 891 P.2d 804]) have suggested that section 1717 applies in certain situations not involving a unilateral fee provision. However, neither in Hsu v. Abbara, nor in any other case has the Supreme Court directly addressed this question.
The confusion among the Courts of Appeal originated with a brief line of cases, to which my colleagues advert, suggesting that the statute is procedural as well as substantive and that its language is so broad that it applies *1164 not only to contractual provisions granting a unilateral right to fees but as well to contracts providing reciprocal rights. (T.E.D. Bearing Co. v. Walter E. Heller & Co. (1974) 38 Cal.App.3d 59, 63 [112 Cal.Rptr. 910]; Beneficial Standard Properties, Inc. v. Scharps (1977) 67 Cal.App.3d 227, 231 [136 Cal.Rptr. 549]; and M. C. & D. Capital Corp. v. Gilmaker (1988) 204 Cal.App.3d 671, 676-677 [251 Cal.Rptr. 178].) These cases addressed the issue whether attorney fees authorized by contract are recoverable as costs or only as special damages. Prior to 1987, such fees could be awarded only upon pleading and proof. Attorneys, often unaware that attorneys fees which are based on contract rather than on statute cannot be taxed as costs under Code of Civil Procedure section 1021 and must be alleged and demanded in the complaint, often neglected to plead and prove them. Responding to this problem, courts in cases such as those just cited conveniently seized upon Civil Code section 1717 as an alternative statutory basis for contractually authorized fees, thereby eliminating the pleading requirement. This was an equitable result, because the contracts involved in those cases intended all parties to receive the benefit of the fee provision. The strained opinions in these cases do not, however, persuasively explain why the right to fees created in section 1717 should apply to parties not in need of a statutory right.
In any case, in 1986 the Legislature eliminated any confusion as to whether attorney fees are in the nature of costs or special damages by amending section 1033.5 of the Code of Civil Procedure. This amendment to the cost bill statute specifically provides that “costs” includes attorney fees authorized by contract. (Code Civ. Proc., § 1033.5, subd. (a)(10); see Bankes v. Lucas (1992) 9 Cal.App.4th 365, 371 [11 Cal.Rptr.2d 723].) Cases such as T.E.D. Bearing Co v. Walter E. Heller & Co., Beneficial Standard Properties, Inc. v. Scharps, and M. C. & D. Capital Corp., are thus no longer useful for any purpose other than to continue the confusion they unfortunately created as to the ambit of Civil Code section 1717. If anything, this superseded line of cases suggests that a just cause does not justify the perversion of section 1717, and that a legislative solution is preferable.
With respect to the definition of “prevailing party,” the Legislature has provided the solution, not by amending Civil Code section 1717 but by enacting section 1032. The fact that the Legislature used the Code of Civil Procedure as its vehicle, and not the Civil Code, is instructive. It shows that if, as the majority claims, the Legislature intended to define the phrase “prevailing party” in connection with bilateral attorney fee agreements prior to the enactment of section 1032, section 1717 would not be the place it would have made such a change. The most obvious place would be provisions of the Code of Civil Procedure dealing with attorney fees generally the place it later selected when it actually made this change by enacting section 1032.
*1165 If the Legislature meant to achieve this purpose in the 1981 or 1983 amendments to Civil Code section 1717, Code of Civil Procedure section 1032 would be superfluous. Indeed, one of the strange consequences of the majority’s opinion is to undermine the significance of the definition of “prevailing party” in section 1032, which most easily supports the majority’s position.
II.
The erroneous judicial assumption that it is necessary to resort to Civil Code section 1717 in order to achieve an equitable definition of whether a particular party “prevailed” in the case results from the failure to look beyond the “net monetary recovery” language of Code of Civil Procedure section 1032. As the majority correctly points out, that phrase is conditioned by other language later in the statute which authorizes the denial of fees to the party who achieves a net monetary recovery “in situations other than as specified . . .”—that is, in situations in which money is not the only or best measure of success. Thus it was through section 1032, not section 1717, that the Legislature vested trial courts with the discretion that was exercised in this case. The fact that the trial judge here relied on 1717 does not prevent us from affirming him on another basis. He reached the right result on the wrong statute.
As my colleagues point out, section 1032 provides that the “prevailing party” may be “as determined by the court,” and may be a party other than the one achieving a net monetary recovery “in situations other than as specified”; i.e., where the circumstances are other than the four specifically spelled out in subdivision (a)(4) of section 1032. While I do not disagree with this, I think there is other language in section 1032 which more strongly supports the majority’s conclusion; namely the first sentence of section 1032, which states: “(a) As used in this section, unless the context clearly requires otherwise. HO • • • HD (4) ‘Prevailing party’ includes [etc.]” The italicized phrase must be deemed, I believe, to preserve the power of the court to depart from the statutory guidelines where adherence to the guidelines would achieve an inequitable result. As Sutherland points out, “Where a definition clause [in a statute] is clear it should ordinarily control the meaning of words used in the remainder of the act because of its authoritative nature. But the courts are not bound to follow a statutory definition where obvious incongruities in the statute would otherwise be created, or where one of the major purposes of the legislation would be defeated or destroyed. Where a definition is not clear then the court should use all intrinsic and extrinsic aids available to determine the legislative intent. The presumption should be that a fair interpretation of the meaning of words as defined in the definition section should control.” (1A Sutherland, Statutory Construction (5th ed. 1993) § 27.02, p. 467, fns. omitted, italics added.) It is *1166 not the purpose of section 1032 to artificially constrict the meaning of “prevailing party,” but simply to identify the criteria that ordinarily come into play when determining who is the prevailing party. Where, as in our case, application of the specified criteria would have an unfair result— because the party achieving a “net monetary recovery” is not really the “prevailing party"—the purpose of the statute would be defeated if the specified criteria were the only ones that could be considered. Inclusion in the statute of the phrase “unless the context clearly requires otherwise” (as well as the phrase “a situation other than as specified”) shows that the Legislature anticipated this possibility, and specifically authorized trial courts to depart from the specified criteria when it would be inequitable to adhere strictly to any particular specified criterion, such as the “net monetary recovery” test. In other words, the criteria set forth in section 1032 are merely guidelines and were never intended to rigidly constrain trial judges. In short, the inequity the majority seeks to cure by an unjustifiably broad interpretation of section 1717 can be adequately dealt with under section 1032.
III.
The majority’s unnecessary reliance on section 1717, and the analysis it employs to justify that reliance, is destined to work mischief. For example, section 1717 has consistently been held not to afford recovery of fees for tort claims arising out of or related to contracts specifically providing that attorney fees incurred to enforce the contract shall be awarded. (See, e.g., Reynolds Metals Co. v. Alperson (1979) 25 Cal.3d 124, 129 [158 Cal.Rptr. 1, 599 P.2d 83]; Stout v. Turney (1978) 22 Cal.3d 718, 730 [150 Cal.Rptr. 637, 586 P.2d 1228]; Moallem v. Coldwell Banker Com. Group, Inc. (1994) 25 Cal.App.4th 1827, 1830 [31 Cal.Rptr.2d 253].) The case law allows attorney fees for tort claims only where the contractual attorney fee provision was phrased broadly enough to cover such noncontractual claims. (Xuereb v. Marcus & Millichap, Inc., supra, 3 Cal.App.4th 1338.) In all of those cases, however, the attorney fee provision was not unilateral but bilateral, and therefore not within the ambit of section 1717. The courts have refused to allow recovery of attorney fees for tort claims in cases in which the prevailing party’s right to fees is predicated on the reciprocity mandated under section 1717.
For example, in Moallem v. Coldwell Banker Com. Group, Inc., supra, 25 Cal.App.4th 1827, the prevailing plaintiff’s request for attorney fees under section 1717 was denied at trial because the judgment in his favor was for negligence and breach of fiduciary duty, but not for breach of contract. On appeal he relied on cases, like Xuereb v. Marcus & Millichap, Inc., supra, allowing fees for tort claims where the contract provided that attorney fees *1167 would be allowed to the prevailing party in any action “arising out of’ the contract (or similar broad language). The Court of Appeal rejected the argument, pointing out that in the cases upon which the plaintiff relied, the contract provisions provided for attorney fees to whichever party prevailed, unlike the unilateral provision of the contract involved in the case. The court observed that Moallem, the successful plaintiff, “thus occupies the difficult position of arguing that the ‘public policy’ of reciprocity of contractual attorney fee provisions, which section 1717 appears to implement, should control a noncontractual case that is specifically beyond section 1717’s ambit. Although we sympathize with Moallem’s position, we conclude that, just as its reach exceeds the statute’s grasp, to adopt it would overreach our judicial function.” (Moallem v. Coldwell Banker Com. Group, Inc., supra, 25 Cal.App.4th at p. 1831.) The same thing should be said here, and it is easier to do so because in this case, unlike Moallem, there is an independent basis upon which to reach an equitable result.
My colleagues walk where the Moallem court feared to tread, because they apply section 1717’s definition of “prevailing party” to a case that is specifically beyond that statute’s ambit. The majority has, in effect, conflated sections 1717 and 1032, rendering it no longer important whether the attorney fee provision at issue creates a unilateral right to fees or reciprocal rights. The rationale the majority adopts would justify not only the result they desire in this case, but other consequences they may not anticipate.
A petition for a rehearing was denied February 13, 1998, and the petition of appellant Brian F. Sears for review by the Supreme Court was denied April 22, 1998. Mosk, J., was of the opinion that the petition should be granted.