Filed 8/3/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| STEPHEN HOM, as Trustee, etc.,<br><br>    Cross-complainant and<br>    Appellant,<br><br>v.<br><br>DENNIS PETROU et al.,<br><br>    Cross-defendants and<br>    Respondents. | A161770<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-13-536307) |

Stephen Hom appeals the trial court's order awarding attorney's fees to Dennis Petrou and Brian Utter after the settlement and dismissal of a cross-complaint Hom filed against them and others. He argues the trial court erred because Petrou and Utter were not prevailing parties on Hom's claim for declaratory relief concerning a lease containing the attorney's fees provision and further asserts that Petrou and Utter could not collect fees on his tort claims because they were not parties to the lease. We conclude the trial court correctly awarded fees and will affirm the order.

## BACKGROUND

Hom's parents rented out a building they owned in San Francisco to Pure Entertainment, LLC to operate a bar and restaurant. Besides addressing the rent due, the term of the lease, and similar provisions, the lease Pure Entertainment signed allowed Pure Entertainment to encumber its leasehold in favor of any of its lenders. Two of the lease's

1

nine pages gave various rights and responsibilities to a lender with an encumbrance on Pure Entertainment's leasehold, including the rights to do anything required of Pure Entertainment under the lease, foreclose on the leasehold, receive copies of notices due to Pure Entertainment, cure any breach of the lease by Pure Entertainment, and enter into a new lease at the lender's option following any default by Pure Entertainment. The lease also specified that Pure Entertainment and the landlord would not modify or cancel the lease without the written consent of the lender. The last sentence of the lease further stated, "Should any dispute arise from this Lease or the tenancy hereby created, and the parties cannot settle it between themselves, then the prevailing party will be entitled to reimbursement of its reasonable attorneys' fees, in addition to any other remedy awarded." Pure Entertainment later signed promissory notes with Petrou and Utter in which Pure Entertainment pledged all of its assets as security for certain debts Pure Entertainment owed Petrou and Utter.

A dispute arose between Pure Entertainment and Hom's parents that resulted in litigation. Pure Entertainment filed a complaint for breach of contract. After his parents passed away and Hom became the trustee to the trust holding title to the property, Hom filed a second amended cross-complaint against Pure Entertainment and, among others, Petrou and Utter. As relevant here, the cross-complaint alleged that Petrou and Utter became lenders with leasehold encumbrances for the purpose of interfering with Hom's ability to collect rent and evict Pure Entertainment. The cross-complaint further alleged Petrou and Utter did not qualify as lenders as contemplated in the lease and their

2

loans were a sham. The cross-complaint asserted claims against Petrou and Utter for intentional and negligent interference with contract, conspiracy, and a declaration of Hom's rights and obligations under the lease.

Hom and Pure Entertainment ultimately executed a settlement agreement that required Hom to dismiss the entire cross-complaint with prejudice. The trial court enforced the settlement by dismissing the cross-complaint with prejudice.

Petrou and Utter then moved for attorney's fees based on the lease's attorney's fees provision. The trial court granted their motion and awarded them approximately $150,000 in fees.

## DISCUSSION

### I. Legal principles and standard of review

"A party may not recover attorney fees unless expressly authorized by statute or contract. [Citations.] In the absence of a statute authorizing the recovery of attorney fees, the parties may agree on whether and how to allocate attorney fees. [Citation.] They may agree the prevailing party will be awarded all the attorney fees incurred in any litigation between them, limit the recovery of fees only to claims arising from certain transactions or events, or award them only on certain types of claims. The parties may agree to award attorney fees on claims sounding in both contract and tort." (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 818 (*Brown Bark*).)

When a party seeks to enforce a contractual fees provision and requests fees related to litigation of claims "on a contract," Civil Code[1] section 1717 makes the attorney's fees provision reciprocal, in at least

---

[1] All statutory references are to the Civil Code.

3

two ways. (§ 1717, subd. (a); *Brown Bark, supra*, 219 Cal.App.4th at p. 819.) First, section 1717 allows either party to collect fees if the contract allows one party but not the other to do so. (*Brown Bark*, at p. 819.) Second, section 1717 allows "a party who defeats a contract claim by showing the contract did not apply or was unenforceable to nonetheless recover attorney fees under that contract if the opposing party would have been entitled to attorney fees had it prevailed." (*Ibid.*) Aside from mandating reciprocity, section 1717 also addresses how to determine which party is the prevailing party for the purposes of a request for fees in an action on a contract. (§ 1717, subd. (b).) As relevant here, section 1717, subdivision (b)(2) states that "[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section."

Because section 1717 only applies to an action "on a contract," the statute and its reciprocity rules do not apply to claims for fees for tort or other non-contract claims. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 602 (*Santisas*).) For such claims, "the question of whether to award attorneys' fees turns on the language of the contractual attorneys' fee provision, i.e., whether the party seeking fees has 'prevailed' within the meaning of the provision and whether the type of claim is within the scope of the provision." (*Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 708.) Because there is no requirement of reciprocity for non-contract claims, a provision that awards fees for such claims to only one party will be enforced according to its terms, regardless of any apparent unfairness. (*Moallem v.*

4

*Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th 1827, 1832–1833 (*Moallem*).)

To interpret the scope and meaning of a contractual fees provision, "we apply the ordinary rules of contract interpretation. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation. [Citation.] Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.' " (*Santisas*, *supra*, 17 Cal.4th at p. 608.)

We review de novo the trial court's application of section 1717 and its interpretation of the lease's attorney's fees provision. (*Khan v. Shim* (2016) 7 Cal.App.5th 49, 55.)

5

## II. Analysis

The trial court ruled that all of Hom's claims against Petrou and Utter were "on the contract" and that Petrou and Utter prevailed on those claims. But the parties now agree that only Hom's declaratory relief claim was on the contract, so section 1717 applies only to that claim. Hom also argues and Petrou and Utter do not dispute that Petrou and Utter do not qualify as prevailing parties for the declaratory relief claim under section 1717. But Petrou and Utter argue that Hom cannot exclude from the fees award those amounts apportionable to the declaratory relief claim because Hom failed to seek such apportionment in the trial court. Hom in turn disclaims any reliance on an apportionment theory and says that he raises the issue with the declaratory relief claim only as part of his overall argument that the entire fee award should be reversed.

Although Hom did not cite the specific subdivision, he did adequately raise the application of section 1717 below in his briefing and at the hearing below, so he has not forfeited the issue. We agree with Hom that section 1717, subdivision (b)(2) would bar an award of fees on Hom's declaratory relief claim because the trial court dismissed it pursuant to a settlement. (§ 1717, subd. (b)(2) ["Where an action has been . . . dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section"].) Because Hom does not request apportionment of the fee award, however, this error warrants reversal only if the award of fees on the non-contract claims was also improper. We must therefore determine whether the trial court properly awarded Petrou and Utter their attorney's fees on Hom's non-contract claims.

6

This inquiry would normally entail examining the fees provision to see (1) if it covers non-contract claims, (2) whether Petrou and Utter may claim the benefit of it, and (3) whether Petrou and Utter are prevailing parties within its meaning. (*Brown Bark*, *supra*, 219 Cal.App.4th at pp. 827–828; *Santisas*, *supra*, 17 Cal.4th at pp. 608–609.) But we may omit the first and third of these steps because Hom does not dispute that the fees provision is broad enough to apply to his tort claims, nor does he dispute that Utter and Petrou prevailed on those claims within the meaning of the fees provision. Instead, he contends they cannot claim the benefit of the fees provision. Hom argues primarily that nonsignatories to a contract can never collect fees relating to tort claims, except in the rare circumstance that the contract expressly identifies them as entitled to do so. For this argument, Hom relies on *Topanga and Victory Partners v. Toghia* (2002) 103 Cal.App.4th 775, 783–787 (*Topanga*); *Sweat v. Hollister* (1995) 37 Cal.App.4th 603, 615–616 (*Sweat*), disapproved of on other grounds by *Santisas*, *supra*, 17 Cal.4th at p. 609, fn. 5; *Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541, 549–550 (*Super 7*); and *Brown Bark*, *supra*, 219 Cal.App.4th 809. We therefore examine each of these cases in turn to determine whether they establish a per se rule barring nonsignatories from collecting attorney's fees on tort claims under a contractual fees provision.

*Topanga*

In *Topanga*, a landlord sued a tenant corporation and a shareholder/officer of the corporation as its alter ego for breach of contract and tort claims. (*Topanga, supra,* 103 Cal.App.4th at p. 778.) After the landlord settled the case with the corporation and voluntarily dismissed the shareholder with prejudice, the shareholder moved to collect his attorney's fees related to the landlord's tort claims based on the contract's attorney's fees provision. (*Ibid.*) The provision allowed the prevailing party to collect attorney's fees " '[i]f either Landlord . . . or Tenant . . . commences or engages in . . . any action or litigation or arbitration against the other party arising out of or in connection with the Lease, the Premises or the Building or the Property.' " (*Id.* at pp. 778–779.) The provision further specified, " 'If Landlord becomes involved in any litigation or dispute, threatened or actual, by or against anyone not a party to the Lease, but arising by reason of or related to any act or omission of Tenant or Tenant's Employees, Tenant agrees to pay Landlord's reasonable attorneys' fees and other costs incurred in connection with the litigation or dispute.' " (*Id.* at p. 779.) The Court of Appeal held that because section 1717 and its reciprocity rules did not apply to the tort claims, and because the shareholder "simply was not a party to" the lease, he could not invoke the contract's fees provision to collect fees on the tort claims. (*Id.* at p. 786.)

Unlike Hom, we do not read *Topanga* as establishing a blanket rule that a nonsignatory is barred in every instance from recovering attorney's fees on tort claims pursuant to a contractual fees provision. The court's conclusion that the shareholder could not collect fees

8

because he was not a party to the contract is not surprising, given that the contract's attorney's fees provision was limited to the expressly named landlord and tenant. The shareholder relied primarily on section 1717, and there is no indication that he raised any other theory by which he could have claimed the benefits of the fees provision, such as a third party beneficiary theory. This is likely because the contract expressly addressed litigation between a party to the contract and third parties by giving the landlord a non-reciprocal right to attorney's fees in such situations. *Topanga* therefore cannot be read to establish as a matter of law that nonsignatories are necessarily barred from obtaining fees under a contract. (*Sanjiv Goel, M.D., Inc. v. Regal Medical Group, Inc.* (2017) 11 Cal.App.5th 1054, 1063 [" 'Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered' "].)

*Super 7* and *Sweat*

In *Super 7, supra*, 16 Cal.App.4th at page 544, a buyer of real estate sued the seller and the seller's broker for fraud and rescission of the sale. The purchase agreement included a fees provision that read, " 'In any action or proceeding arising out of this agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs.' " (*Ibid.*) The document included a separate section titled "Acceptance," which the seller had signed to indicate his acceptance and which stated that the seller would pay the broker a commission. (*Ibid.*) The broker signed on another line in the "Acceptance" section. (*Ibid.*) The "Acceptance" section included its own fees provision, stating

9

that the prevailing party could recover attorney's fees in any action between the broker and seller arising out the agreement. (*Ibid.*)

The Court of Appeal held that the broker could not collect his attorney's fees from the buyer under the purchase agreement. (*Super 7, supra,* 16 Cal.App.4th at p. 544.) The court reasoned that the broker was not a party to the purchase contract because, even though the contract referred to him in one clause, the broker had no contractual obligations or interest in the sale of the property. (*Id.* at p. 545.) The court rejected the broker's argument that he was a party based on his signature in the "Acceptance" section. (*Id.* at p. 546.) The court found that the "Acceptance" section containing the broker's commission agreement was a separate agreement from the buy-sell agreement, and that the broker was a stranger to the latter agreement. (*Ibid.*) The buyer's suit did not arise from the broker's commission agreement. (*Ibid.*) Applying the rules for interpreting contracts, the court further reasoned that allowing the broker to collect fees under the buy-sell agreement would render the separate fees provision in the broker's commission agreement redundant and unnecessary. (*Ibid.*)

*Super 7* also rejected the broker's theory that was he was a third party beneficiary of the buy-sell agreement, for two reasons. (*Super 7, supra,* 16 Cal.App.4th at pp. 546–547.) First, the court found the broker cited no authority allowing a third party beneficiary to do anything other than collect the benefits due under the contract. (*Id.* at p. 546.) The court further noted that "the basic premise underlying attorney fee clauses, i.e., a party is not liable for attorney fees unless he agrees to the clause, is inconsistent with [the broker's] theory, because a third party beneficiary does not participate in reaching the

10

agreement. [The broker's] theory would have the third party beneficiary bound by an agreement to which he did not consent." (*Ibid.*) The second and more fundamental problem, according to the court, was that the agreement did not confer third party beneficiary status on the broker because the buy-sell agreement contained no promise to pay the broker and the broker's rights arose solely from the separate broker's commission agreement. (*Id.* at pp. 546–547.)

The third case Hom cites, *Sweat*, *supra*, 37 Cal.App.4th at pages 605–606, involved essentially the same fact pattern as *Super 7*: A buyer of property sued the sellers and the sellers' brokers for misrepresentation and nondisclosure. The purchase agreement's fees provision was similar, if not identical, to the one at issue in *Super 7*, and the facts were no different. (*Id.* at pp. 615–616.) *Sweat* followed *Super 7* and held that the brokers could not collect fees based on the purchase agreement because they were not parties to that contract. (*Id.* at p. 616.)

*Super 7* and *Sweat* do not establish a blanket rule against allowing nonsignatories to collect fees any more than does *Topanga*. To the contrary, those decisions' focus on the specific language in the contracts at issue demonstrates that the relevant question is simply whether the language of the attorney's fees provision covers nonsignatories. The purchase agreements at issue in *Super 7* and *Sweat* did not, because the brokers were not parties to the agreements and could not be considered third party beneficiaries in light of the side agreements providing for the broker's commissions.

*Super 7*'s remarks about the incompatibility of a third party beneficiary theory and an attorney's fees provision appear to be dicta,

11

since the court concluded that the purchase agreement did not confer third party beneficiary status on the broker in that case. (*Super 7*, *supra*, 16 Cal.App.4th at p. 546.) But even if those remarks were not dicta, we find them unpersuasive. The court found no authority indicating that a third party beneficiary "has any right other than to collect the benefits the contracting parties agreed to confer on him." (*Ibid.*) This begs the question, however, because the issue at hand is whether one of the benefits the contracting parties agreed to confer on a third party beneficiary is the right to recover attorney's fees in litigation arising from the contract. *Super 7*'s remark about it being inconsistent to allow a third party beneficiary to collect attorney's fees under a contract which the beneficiary did not negotiate or to which the beneficiary did not consent (*ibid.*) is puzzling, because, by definition, a third party beneficiary is not a party to the agreement whose benefits the beneficiary seeks to enforce. Moreover, attorney's fees provisions need not be reciprocal with regard to non-contract claims, so the fact that a third party beneficiary cannot be liable for attorney's fees on such claims presents no bar to allowing a third party beneficiary to collect such fees. (*Moallem*, *supra*, 25 Cal.App.4th at pp. 1832–1833 [fees provisions can be non-reciprocal for non-contract claims]; accord, *Brown Bark*, *supra*, 219 Cal.App.4th at pp. 828–829.)

*Brown Bark*

Hom claims, based on a remark in *Brown Bark*, that the only exception to the blanket rule prohibiting nonsignatories from collecting attorney's fees is when the fees provision "expressly identifies that party as a party entitled to its benefits." (*Brown Bark*, *supra*, 219 Cal.App.4th at p. 828.) Although *Brown Bark* dealt with a claim

for fees by a successor in interest to a contracting party, the passage Hom quotes was not referring to nonsignatories or third parties. The court there was merely describing the principle that section 1717 does not make a fees provision reciprocal for tort claims, so anyone seeking fees for tort claims under a contract must prove the contractual fees provision applies to that person. (*Ibid.*) The decision *Brown Bark* cited for this statement, *Moallem*, was similar. (*Ibid.*, citing *Moallem*, *supra*, 25 Cal.App.4th at pp. 1830–1832 [Moallem not entitled to fees on tort claims under section 1717; unilateral fees provision allowed only defendant broker to recover fees associated with tort claims].) These decisions do not recognize a blanket rule prohibiting nonsignatories from collecting fees on tort claims, nor do they establish or acknowledge any exceptions to such a rule.

*The language of the attorney's fees provision in the lease*

The absence of a blanket rule regarding fees for nonsignatories in these authorities should not be surprising. *Santisas* makes clear that the scope of a contractual right to attorney's fees on non-contract claims is a question of contractual intent. (17 Cal.4th at p. 617 [for non-contract claims not covered by section 1717, "the attorney fee provision, *depending upon its wording*, may afford the defendant a contractual right, not affected by section 1717, to recover attorney fees incurred in litigating those causes of action," italics added]; *id.* at p. 619 [because section 1717 does not apply to tort claims, "it does not bar recovery of attorney fees that were incurred in litigation of those claims and that are otherwise recoverable as a matter of contract law"].) Because the language in contractual fees provisions will vary from contract to contract, it scarcely seems possible to establish a blanket rule

13

regarding the availability of fees for nonsignatories. We must therefore examine the language of the lease here to determine whether the fees provision covers Petrou's and Utter's tort claims. (*Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 680 [examining fees provision to determine if it covered third party beneficiaries] (*Sessions*).)

The parties have not pointed to any extrinsic evidence on the question, so our analysis focuses solely on with the language of the lease, which we interpret as a question of law. (*Khan v. Shim*, *supra*, 7 Cal.App.5th at p. 55.) Because Petrou and Utter seek the benefits of the lease even though they did not sign it, we begin with the law concerning third party beneficiaries.[2] A nonsignatory is entitled to bring an action to enforce a contract as a third party beneficiary if the nonsignatory establishes that it was likely to benefit from the contract, that a motivating purpose of the contracting parties was to provide a benefit to the third party, and that permitting the third party to enforce the contract against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the

---

[2] Hom contends Petrou and Utter do not claim to be third party beneficiaries, but we disagree. They argue they are entitled to the benefits of the fees provision whether they are considered parties or beneficiaries. Hom further argues that Petrou and Utter did not raise a third party beneficiary theory below. While they did not use the specific phrase, the substance of their argument was that they were entitled to the benefit of the lease because of their status as lenders. To the extent that the third party beneficiary theory is a new argument on appeal, we exercise our discretion to entertain it as an issue of law. (*Sweat*, *supra*, 37 Cal.App.4th at p. 610, fn. 6 ["it is within the power of this court to grant relief based on pure issues of law, even though the same are raised for the first time on appeal"].)

14

contracting parties. (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 821.)

There can be little doubt that Petrou and Utter qualify as third party beneficiaries of the lease as a whole. They were lenders to Pure Entertainment with encumbrances on its leasehold, and two of the lease's nine pages specify the rights such lenders would have with respect to the lease. Those rights include the right to receive copies of notices due to Pure Entertainment; prevent the parties to the lease from modifying the lease without the lenders' consent; do anything required of Pure Entertainment under the lease; foreclose on the leasehold; cure any breach of the lease by Pure Entertainment; and enter into a new lease at the lenders' option following any default by Pure Entertainment. Given the detail with which the lease specified the lenders' rights, one of the contracting parties' motivating purposes was evidently to allow Pure Entertainment to use its leasehold as collateral for loans from future lenders such as Petrou and Utter, and to permit Petrou and Utter to protect the value of their encumbrance on the leasehold. Permitting Petrou and Utter to obtain benefits under the lease is therefore consistent with the parties' expectations.

Turning to the language of the fees provision, we further conclude that one of the benefits to which the lenders were entitled under the lease was the right to collect attorney's fees in an action arising from the lease. The attorney's fees provision in the lease here states in full, "Should any dispute arise from this Lease or the tenancy hereby created, and the parties cannot settle it between themselves, then the prevailing party will be entitled to reimbursement of its reasonable attorneys' fees, in addition to any other remedy awarded." The phrase

15

"any dispute" is broad and is not limited to disputes between the contracting parties.  The lease's fees provision is broader than the provision entitling a prevailing party to fees " '[i]n the event of any action or proceeding brought by either party against the other under this Lease,' " which another court held would allow third party beneficiaries to collect fees.  (*Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 377, 383; see *Cargill Inc. v Souza* (2011) 201 Cal.App.4th 962, 965, 969–970 [contract allowed third party to collect attorney's fees where the fees provision applied "[i]n the event that any party hereto obtains a judgment in its favor in connection with the enforcement or interpretation of this Agreement"].)  It is at least as broad as the provision, " 'If a court action is brought, prevailing party to be awarded attorneys fees and collection costs,' " which *Loduca v. Polyzos* (2007) 153 Cal.App.4th 334, 343, held allowed a third party beneficiary to collect his fees.

The "any dispute" phrase is also more expansive than other phrases that courts have held extend only to contracting parties, such as " '[i]n the event it becomes necessary for either party to enforce the provisions of this Agreement' " (*Sessions*, *supra*, 84 Cal.App.4th at p. 681) or in " 'any litigation between the parties hereto to enforce any provision of this Agreement' " (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 896, italics removed).  For the same reason, it is distinguishable from the fees provision at issue in in the lease in *Topanga*, which specifically named the landlord and tenant as the parties entitled to collect attorney's fees.  (*Topanga*, *supra*, 103 Cal.App.4th at pp. 778–779.)  In comparison with these

16

decisions, the fees provision's expansive language is broad enough to encompass claims by third party beneficiaries like Petrou and Utter.[3]

The parties spar over the proper interpretation of the fees provision's clause allowing fees for any dispute if "the parties cannot settle it between themselves."  Hom maintains that this reference to "parties" indicates that the provision was intended to apply solely to the contracting parties.  Petrou and Utter counter that the clause relates to the "any dispute" phrase, since the "it" in the clause refers back to "dispute."  Petrou's and Utter's interpretation is more reasonable, but it is not so conclusive as to foreclose Hom's contrary interpretation, so we conclude that the reference to "parties" in the fees provision is ambiguous.  (*Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, 360 ["An ambiguity exists when a party can identify an alternative, semantically reasonable, candidate of meaning of a writing"].)  To resolve the ambiguity, we interpret the phrase using the ordinary rules of contractual interpretation.  (*Santisas*, *supra*, 17 Cal.4th at p. 608.)

Hom notes that the lease elsewhere uses "party" or "parties" to refer to the landlord and Pure Entertainment, and he cites the rule that a word used multiple times in a contract is generally given the same meaning, unless the contract indicates otherwise.  (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 475.)  We conclude

---

[3] Hom distinguishes these decisions construing fees provisions because they involved reciprocity analysis under section 1717.  Section 1717 and its reciprocity analysis are not applicable here, but these decisions' interpretations of various fees provisions as part of that analysis are nonetheless relevant to our task of interpreting the lease's fees provision.

the lease here does indicate otherwise. "Landlord" and "Tenant" are both specifically defined terms in the lease, while "parties" is not. This shows the term was intended to be context-dependent, rather than have a fixed and unchanging meaning. A comparison of the various uses of "parties" in the lease confirms this and demonstrates why the term in the fees provision is more reasonably read to include lenders.

In one paragraph, the lease defines the acts that will constitute a default and breach of the lease to include the making "by either party" of a general assignment for the benefit of creditors, the filing "by either party" of a petition for bankruptcy or reorganization, or the assignment of a receiver to take possession of substantially all of the assets of "either party." The use of "either" denotes one of two things and refers to the original parties to the lease. Reading "party" in this clause to include lenders would also be unreasonable because it would make the tenant's default under the Lease contingent on actions by its lenders, who are beyond the tenant's control.

In another paragraph, the lease states that the "parties" agreed the tenant would prepay a fixed amount for the last month's rent due under the lease. Similarly, earlier in same paragraph containing the attorney's fees provision, the lease contains an integration clause stating that the lease "encompasses the entire understanding of the parties with respect to the subject matter covered herein." Because there were no Lenders with rights under the Lease when the Lease was first executed and the tenant had to prepay the last month's rent, "parties" in these two instances naturally refers only to the Landlord and Tenant.

The fees provision is different. As described above, the lease confers extensive rights on lenders. Because the lease goes into such detail regarding lenders' rights, it was reasonably foreseeable that disputes involving lenders would arise over those rights. It is natural, then, to conclude that the landlord and tenant intended to give lenders the same rights to attorney's fees as the direct parties to the contract. The lease is substantially different in this regard from the agreement at issue in *Super 7* and *Sweat*, which those courts held used "parties" consistently to refer only to signatories to the contract. (*Super 7*, *supra*, 16 Cal.App.4th at p. 546, fn. 3; *Sweat*, *supra*, 37 Cal.App.4th at pp. 615–616 [fees provision was essentially identical to that in *Super 7*].) The real estate purchase agreements in *Super 7* had only a single, inconsequential reference to the broker trying to collect fees under them, while the lease here describes Petrou's and Utter's rights as lenders in detail. (*Super 7*, at p. 546, fn. 3; *Sweat*, at pp. 615–616.) The *Super 7* and *Sweat* agreements also allowed the buyer and seller to modify the agreement without the broker's consent, whereas here the lease could not be modified without a lender's consent after a lender obtained an encumbrance over Pure Entertainment's leasehold and the landlord received notice of it. (*Super 7*, at p. 546, fn. 3; *Sweat*, at pp. 615–616.) The substantial rights the lease accords to lenders like Petrou and Utter, as well as the language in the fees provision that ties the word "parties" to "any dispute" in which attorney's fees might be incurred, indicates that "parties" in the fees provision here, unlike the fees provision in *Super 7* and *Sweat*, was intended to have a different meaning from the rest of the lease and encompass third party beneficiaries.

19

In sum, we conclude Petrou and Utter are entitled to collect their attorney's fees related to Hom's non-contract claims as third party beneficiaries to the lease and its broad attorney's fees provision. Because Hom does not seek apportionment of the fees award, this means Petrou and Utter are also entitled to their fees related to Hom's declaratory relief claim.

## DISPOSITION

The trial court's order is affirmed. Petrou and Utter are entitled to their attorney's fees and costs on appeal. " ' "Although this court has the power to fix attorney fees on appeal, the better practice is to have the trial court determine such fees." ' " (*SASCO v. Rosendin Electric, Inc.* (2012) 207 Cal.App.4th 837, 849.) We therefore remand for the trial court to determine the total amount of fees to which Petrou and Utter are entitled.

BROWN, J.

WE CONCUR:

STREETER, ACTING P. J.
TUCHER, J.

*Hom v. Petrou et al.* (A161770)

20

Trial Court:  San Mateo County Superior Court

Trial Judge:       Hon. Harold Khan

Counsel:

Law Office of Jocelyn Sperling, Jocelyn Sperling; Rencher Law Group, D.L. Rencher for Cross-complainant and Appellant.

Kilpatrick Townsend & Stockton, James A. Smith for Cross-defendants and Respondents.