Filed 11/18/21  Bays v. Ashcraft CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| RICHARD BAYS et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>DODI ASHCRAFT,<br><br>    Defendant and Appellant. | D079056<br><br><br>(Super. Ct. No. 16CV01663) |


APPEAL from a postjudgment order of the Superior Court of Santa Cruz County, Timothy J. Schmal, Judge.  Affirmed.

Watt, Tieder, Hoffar & Fitzgerald and Colin C. Holley, for Defendant and Appellant.

Law Offices of Brian D. Liddicoat and Brian D. Liddicoat, for Plaintiffs and Respondents.


Plaintiffs and cross-defendants Richard Bays and Linda Bays (the Bayses) borrowed money from defendant and cross-complainant Dodi Ashcraft, evidenced by a promissory note secured by a deed of trust on the Bayses' home.  All of the issues at trial concerned whether the Bayses

still owed money on the note (and, if so, how much) and whether Ashcraft could proceed with a nonjudicial foreclosure on the deed of trust.

This is an appeal from a postjudgment order awarding contract-based attorney fees to the prevailing parties following a court trial and entry of judgment. Pursuant to Civil Code section 1717 (section 1717), the trial court determined the Bayses to be the prevailing parties and awarded them attorney fees to be paid by Ashcraft.

On appeal, Ashcraft first contends that the trial court erred in determining the Bayses to be the prevailing parties. According to Ashcraft, the trial court applied an incorrect legal standard in determining the prevailing party for purposes of section 1717; and, in the event the court applied the proper standard, the Bayses did not recover the greater relief on the contract claims. As we explain, given the mixed results at trial, the trial court did not abuse its discretion either in the legal standard it applied or in determining the Bayses to be the prevailing parties.

Ashcraft next argues that the court erred in awarding the Bayses attorney fees for professional services related to two of the noncontract claims in the operative complaint. As we explain, the trial court did not err in concluding that, based on the nature of the Bayses' noncontract causes of action at issue, they are "on the contract," as that phrase has been interpreted and applied under section 1717.

Accordingly, we will affirm the order granting the Bayses' motion for section 1717 attorney fees.

# I. FACTUAL AND PROCEDURAL BACKGROUND[1]

A.   *The Parties*

The parties in this appeal are the Bayses, as respondents, and Ashcraft, as appellant.  They are the only parties to the postjudgment attorney fees order on review.

The case went to trial on a first amended verified complaint (Complaint) and a first amended cross-complaint (Cross-complaint).  In the trial court, the Bayses were the plaintiffs and were included among the cross-defendants; and Ashcraft was included among the defendants and was the cross-complainant.

At all relevant times, the Bayses owned and lived in a single-family home in La Selva Beach.

At all relevant times, Ashcraft was a " 'hard money' " lender, doing business as First Foundation Funding (FFF).[2]  She was a licensed real estate salesperson, although she "held no mortgage lending license or other finance license that would grant her an exception to California's usury law."

B.   *The Bayses Borrow $150,000 from Ashcraft*

In early 2008, the Bayses needed money and were able to offer a lender a second mortgage on their home as collateral for a loan.  When they were unable to obtain a conventional loan, their mortgage loan broker turned to a

---

[1]   The judgment in this case is final.  Thus, for this background, we rely principally on the court's 24-page statement of decision issued after trial.

[2]   The Bayses named "First Foundation Funding Corp." in seven of the nine causes of action of the Complaint.  The trial court found that FFF was a fictitious business name of Ashcraft, through which Ashcraft "attempted to operate an unlicensed lending business from her home."  We refer to FFF only when necessary to show that Ashcraft attempted to differentiate between herself and her fictitious business.

list of " 'hard money lenders.' "[3]  The broker contacted Ashcraft, who indicated an interest and requested initial background information for her to evaluate the potential loan.

In April 2008, Ashcraft told the loan broker that she had approved the loan, and arrangements were made to open an escrow.  In fact, Ashcraft had no money to loan when she "approved" the loan to the Bayses.  After searching for weeks, Ashcraft convinced her friend, Michael Rudinica, to fund the loan escrow with $150,000.

Ashcraft drafted the loan documents, including the promissory note, deed of trust, and closing statements.  In doing so, she unilaterally established the terms of the loan—including, initially, a payment to Ashcraft of over $20,000 in "various 'fees' " directly from escrow.  The note was for a two-year term, provided for an annual interest rate of 15 percent, and required monthly interest-only payments until April or May of 2010, at which time the Bayses would owe a balloon payment of $151,875.[4]

---

[3]    The court described " 'hard money lenders' " as "private lenders . . . willing to finance riskier loans that do not qualify for conventional mortgage financing."

[4]    The uncertainty of the date of the balloon payment is due to the parties having presented two different promissory notes at trial—exhibit No. 2 from the Bayses, and exhibit No. 103 from Ashcraft.  These two-page documents are the same in all material respects *except* for the payee and the date of the balloon payment.  In the note produced by the Bayses, the lender/payee is identified as "Michael P. Rudinica, Trustee of the Rudinica Family Trust, dated April 16, 1999," and the final payment is due May 15, 2010.  In the note produced by Ashcraft, the lender/payee is identified as FFF, and the final payment is due April 15, 2010.

Ashcraft testified that, after the Bayses signed the note she presented (ex. No. 103), she created the note presented by the Bayses (ex. No. 2).  She did this "without the [Bayses'] permission or knowledge" solely "to aid

4

At the close of the escrow for the $150,000 loan, after payment of $43,055.40 in "settlement charges," the Bayses received $106,944.60.

C.     *The Bayses Attempt to Repay the Loan*

The deed of trust (drafted by Ashcraft) named FCI Lender Services (FCI), a commercial mortgage servicing firm, as the trustee. As required, the Bayses made their monthly payments to FCI; and pursuant to instructions from Ashcraft, FCI forwarded the payments to her.

Although Ashcraft's agreement with Rudinica required Ashcraft to forward the monthly payments to him, she kept them for herself. Rudinica sued Ashcraft for fraud, received a $332,668.69 judgment against her in 2009, and obtained an order on the judgment which directed FCI to forward the Bayses' mortgage payments directly to him.

In 2010, Ashcraft "fell out of contact" with the Bayses and Rudinica—including when the Bayses stopped paying FCI or when the $151,875 balloon payment was unpaid in 2010 (and foreclosure proceedings could have been commenced). Shortly thereafter, Rudinica began acting as the Bayses' lender. This allowed Rudinica to receive payments directly from the Bayses, and together he and they negotiated extensions of the date of the balloon payment, which allowed the Bayses to continue making monthly interest-only payments to Rudinica through some date in 2014. By the end of 2013, the Bayses had paid approximately $133,287.50 in interest on the note.

---

Mr. Rudinica in deceiving his wife as to what he (Rudinica) had done with the $150,000 from their family trust."

Ultimately, the court was unable to determine which of the two notes was, in the court's words, "fraudulent, created for the purpose of deception," or "fake." There is no issue on appeal related to the genuineness of the promissory notes.

In 2015, the Bayses and Rudinica entered into a written agreement by which the Bayses would pay $12,000 to Rudinica in exchange for a reconveyance of the deed of trust. Only after escrow opened and the Bayses funded the $12,000 did the parties learn that the lienholder—i.e., the beneficiary under the deed of trust—was FFF.

Ashcraft would not cooperate when contacted on behalf of the parties to the escrow. Instead, she "saw an opportunity" and reached out to Rudinica after the years of no contact, offering him $15,000 for an assignment of the Bayses' loan[5] and in full settlement of the $328,662.69 fraud judgment Rudinica had obtained against her in 2009. Rudinica accepted Ashcraft's offer and backed out of the escrow, leaving the Bayses to deal with Ashcraft.

D.      *The Bayses File the Underlying Action*

In June 2016, the Bayses filed the underlying lawsuit. The record on appeal does not contain a copy of the complaint.

In February 2017, Ashcraft began nonjudicial foreclosure proceedings by recording a notice of default on the promissory note, indicating that the Bayses owed $232,954.06 on the secured loan.

A few months later, the Bayses filed a first amended verified complaint (previously identified as the Complaint), alleging nine causes of action against Rudinica, Ashcraft, and FFF.[6] The trial court described the following

---

[5]      The requirement of an assignment "suggests that [Ashcraft] did not believe herself to be the actual lender on the Bays[es'] loan."

[6]      In the Complaint, the causes of action are entitled and alleged against the defendants as follows: first cause of action, "Cancellation of Deed of Trust" against Ashcraft and FFF; second cause of action, "Cancellation of Assignments of Deed of Trust" against Ashcraft and FFF; third cause of action, "Violations of the Civil Code re: The Notice of Default" against

6

general relief sought by the Bayses: cancellation of the deed of trust, its amendments, and the notice of default; quieting their title against these encumbrances; and various remedies based on the determination that the interest rate on the note was usurious.

In response, Ashcraft filed her Cross-complaint, alleging five causes of action against the Bayses and a mortgage broker (Broker) who she alleged solicited, negotiated and/or arranged the loan to the Bayses.[7] In the only cause of action against the Bayses, Ashcraft sought a declaration of the rights and duties of the Bayses and Ashcraft, as follows: "(a) That the Bayses signed a promissory note with the terms contained in Exhibit A" to the Cross-complaint; "(b) That the Bayses have defaulted on their obligations under the promissory note and deed of trust"; "(c) That the loan was properly arranged

---

Ashcraft and FFF; fourth cause of action, "Breach of Contract" against Rudinica, Ashcraft, and FFF; fifth cause of action, "Specific Performance to Compel Satisfaction and Accord" against Rudinica, Ashcraft, and FFF; sixth cause of action, "Quiet Title" against Ashcraft and FFF; seventh cause of action, "Breach of Fiduciary Duty re: Duty of Undivided Loyalty" against Ashcraft; eighth cause of action, "Breach of the Covenant of Good Faith and Fair Dealing" against Rudinica and Ashcraft; ninth cause of action, "Unlawful, Unfair or Fraudulent Business Practices in violation of California Business & Professions Code §17200" against Rudinica, Ashcraft, and FFF. (Some capitalization and bolding omitted.)

The Bayses tell us that "Rudinica was dismissed as a defendant before trial"—without further explanation or a record reference.

[7] In the Cross-complaint, the causes of action are entitled and alleged against the cross-defendants as follows: first cause of action, "Negligence . . . In Brokering a Loan Beyond the Scope of Its Licenses" against the Broker; second cause of action, "Negligence . . . For Failure to Warn of Improperly Prepared Loan Documents" against the Broker; third cause of action, "Negligent Misrepresentation" against the Broker; fourth cause of action, "Equitable Indemnity" against the Broker; and fifth cause of action, "Declaratory Relief" against the Bayses.

by [the Broker] and is exempt from the provisions of California's usury laws"; "(d) That, at her option, [Ashcraft] may non-judicially foreclose upon the collateral under the power of sale contained in the deed of trust"; and "(e) That the Notice of Default recorded on or about February 6, 2017 was valid."

E.    *The Case Goes to Trial*

Having waived jury, the parties proceeded to a court trial in October 2018. The witnesses included Richard Bays, Ashcraft, Rudinica (by deposition), and two representatives of the Broker. In its statement of decision, the trial court ruled in part as follows.

The Bayses received $106,944.60 in actual loan proceeds in 2008. Between 2008 and 2013, the Bayses made interest payments of $133,287.50.

Without deciding which of the two promissory notes was "authentic" (since Ashcraft was "the effective payee" under both and the beneficiary of the deed of trust), the court ruled that the loan was "clearly usurious"[8] and that none of the legal exceptions to usury applied. Accordingly, Ashcraft was required to "forfeit[ ] *all* interest," which resulted in the application of all interest payments to reduce the principal. (Citing *Gibbo v. Berger* (2004) 123 Cal.App.4th 396, 403-404; see *id.* at p. 403 [" 'When a loan is usurious, the creditor is entitled to repayment of the principal sum only. He is entitled to no interest whatsoever.' "].) In addition, the court voided Ashcraft's notice of

_____

[8]    Depending on whether the principal amount of the loan was $150,000 or $106,944.60 and depending on whether the balloon payment was due in April or May of 2010, the annual interest rate was at least 15 percent and perhaps as high as 25 percent. In 2008 when Rudinica funded the loan, the legal annual rate of interest could not exceed 10 percent. (See Cal. Const., art. XV, § 1.)

8

default (which contended that the Bayses owed $232,954.06 as of Feb. 3, 2017).

"Exercising its powers of equity"[9] on the Complaint, the court ruled that, as of October 4, 2018, the Bayses owed Ashcraft $24,868.32—$18,877.22 in principal and $5,991.10 in interest, which would continue to accrue at a daily rate of $3.62.[10] The $24,868.32 that the Bayses owed Ashcraft was to be offset by any award of costs in favor of the Bayses and against Ashcraft. Upon receipt (or offset) of the amount owed, Ashcraft was to reconvey the deed of trust, to acknowledge in writing that the loan has been fully repaid, and to execute any other documents necessary to clear title to the Bayses' home from any lien or encumbrance resulting from the loan.

As to the Cross-complaint, the court ruled against Ashcraft on each cause of action. As applicable to this appeal, the court denied Ashcraft's fifth cause of action for declaratory relief against the Bayses.

---

[9] The court's equitable considerations were based, at least in part, on the following findings: "The doctrine of unclean hands applies to both matters of law and equity in California, and Ms. Ashcraft's conduct constituted unclean hands under the law. In her activities as to the 2008 Bays Loan and Mr. Rudinica, she appeared to have violated numerous state laws. She engaged in outright deception and, in her dealings with Mr. Rudinica, outright fraud. She was a predatory lender and a usurer. Her attempt to gain usurious interest through foreclosure was likely both oppressive and malicious. She admitted to creating a false promissory note in order to deceive a third party (Mrs. Rudinica), a clear violation of the real estate salesperson['s] code of ethics, regardless of whether it was criminal forgery. . . . All of that weighed on the equities of the matter."

[10] October 4, 2018, was the last day of presentation of evidence at trial. On that date, the parties stipulated to these dollar amounts in the event the court ruled that the loan was usurious.

In closing, as between the Bayses and Ashcraft, for purposes of statutory costs (Code Civ. Proc., § 1032), the court deemed the Bayses to be the prevailing parties on both the Complaint and the Cross-complaint.[11]

In July 2019, the court entered a judgment consistent with its statement of decision.

F.   *The Court Awards the Bayses Attorney Fees in a Postjudgment Order*

In postjudgment proceedings, the Bayses filed a motion for attorney fees and costs pursuant to section 1717 and Code of Civil Procedure sections 1021 and 1032.

Relying on the broad unilateral attorney fees provisions in both the promissory note and the deed of trust (drafted by Ashcraft), the Bayses requested fees for both contract and noncontract claims.[12] The Bayses acknowledged that they did not prevail on all of the claims, arguing instead that the results of the litigation were " 'mixed,' " and overall they (the Bayses) recovered the " 'greater relief.' "

---

[11]   On the Cross-complaint, as between Ashcraft and the Broker, the court deemed the Broker to be the prevailing party for purposes of statutory costs (Code Civ. Proc., § 1032).

[12]   In both notes (trial ex. Nos. 2 and 103), the Bayses agreed as follows: "If the Note Holder has required [the Bayses] to pay immediately in full as described above [i.e., following default], the Note Holder will have the right to be paid back for all it's [*sic*] costs and expenses to the extent not prohibited by law; those expenses include, for example, reasonable attorney's fees."

In the deed of trust, the Bayses agreed:  "To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of [FFF] or [FCI]; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which [FFF] or [FCI] may appear, and in any suit brought by [FFF] to foreclose this Deed."

10

Ashcraft opposed the motion, contending that, based on the specifics of the mixed results at trial, there was no prevailing party. Alternatively, Ashcraft argued that the Bayses were not entitled to an award of fees incurred in connection with the noncontract claims and that, in any event, the Bayses did not present sufficiently detailed time records to allow an allocation of services between the contract and noncontract claims.

The Bayses replied to Ashcraft's opposition, principally emphasizing that all of the claims in the case were " 'on the contract' " for purposes of section 1717, even if not alleged as contract claims.

Following oral argument, in a written order filed in December 2019, the trial court awarded the Bayses $107,605.20, which was the full amount of attorney fees they claimed. Ashcraft timely appealed from this order.

## II. DISCUSSION

Based on the unilateral attorney fees provisions in the note and in the deed of trust, Ashcraft contends the trial court erred in awarding section 1717 attorney fees. She argues first that, based on the mixed results at trial, the court abused its discretion in determining the Bayses to be the prevailing parties. Next, she argues that the reciprocity provided by section 1717 to unilateral attorney fees provisions does not apply here, because section 1717 applies only to contract claims and the court awarded the Bayses fees for noncontract claims.

As we explain, Ashcraft has not met her burden of establishing reversible error. The trial court did not abuse its discretion, and the two noncontract causes of action at issue on appeal are "on the contract" as that phrase is interpreted and applied in section 1717 proceedings.

"Under the American rule, each party to a lawsuit ordinarily pays its own attorney fees." (*Mountain Air Enterprises, LLC v. Sundowner Towers,*

11

*LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).) This rule is codified in Code of Civil Procedure section 1021,[13] which also "permits parties to ' "contract out" of the American rule' by executing an agreement that allocates attorney fees." (*Mountain Air*, at p. 751.) " ' "Parties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." ' " (*Ibid.*) Contracting parties may also "limit the recovery of fees only to claims arising from certain transactions or events, or award them only on certain types of claims." (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 818 (*Brown Bark*).)

As an express statutory exception to Code of Civil Procedure section 1021, section 1717, subdivision (a) authorizes an award of attorney fees in any action "on a contract."[14] (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894 (*Blickman Turkus*).)

" ' "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the

---

[13] Code of Civil Procedure section 1021 provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided."

[14] Section 1717, subdivision (a) provides in part: "In any action *on a contract*, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Italics added.)

criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' " (*Mountain Air, supra,* 3 Cal.5th at p. 751.) The appellant has the burden of establishing reversible error in an appeal from an order awarding section 1717 fees on a contract. (*Dieckmeyer v. Redevelopment Agency of Huntington Beach* (2005) 127 Cal.App.4th 248, 260.)

A.    *Prevailing Party "on the Contract"*

Ashcraft argues the trial court erred in determining that the Bayses were the prevailing parties on the contract for purposes of section 1717, subdivision (a). As we explain, the court did not abuse its discretion in determining that, overall, the Bayses received the greater relief on the contract claims.

1.    *Law*

Under section 1717, the prevailing party in an action to enforce a contract is entitled to reasonable attorney fees when the contract provides for such award. (§ 1717, subd. (a).) The role of the trial court is to "determine who is the party prevailing on the contract for purposes of this section . . . ." (§ 1717, subd. (b)(1).) Where, for example, a party obtains a " 'simple, unqualified win' " on the contract, the court "ha[s] no discretion to deny . . . attorney fees under section 1717 by finding, expressly or impliedly, that there was no party prevailing on the contract." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 877 (*Hsu*).) However, "[i]f neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." (*Scott Co. of California v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109.)

In *Hsu, supra*, 9 Cal.4th at page 876, our Supreme Court established the procedure for determining whether there is a "party prevailing on the contract" for purposes of section 1717, subdivision (b)(1): "[T]he trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' " In determining litigation success, the trial court "should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' " (*Hsu*, at p. 877.)

In reviewing the trial court's determination of a prevailing party for an abuse of discretion (*Mountain Air, supra*, 3 Cal.5th at p. 751; *Blickman Turkus, supra*, 162 Cal.App.4th at p. 894 ["The trial court exercises a particularly 'wide discretion' in determining who, if anyone, is the prevailing party for purposes of section 1717"]), a section 1717 attorney fees award on a contract " 'will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence' " (*Blickman Turkus*, at p. 894).

2.     *Analysis*

Ashcraft argues that the trial court abused its discretion both by applying an incorrect legal standard and by finding that the Bayses were the prevailing parties based on the evidence presented. We are not persuaded.

a.     *Legal Standards Applied*

With regard to the legal standard applied, Ashcraft first contends that, in determining that the Bayses were the prevailing parties for purposes of

14

section 1717, the court improperly relied on its ruling that the Bayses were the prevailing parties for purposes of Code of Civil Procedure section 1032.

In both the statement of decision and the judgment, the court ruled that, for purposes of Code of Civil Procedure section 1032, the Bayses were the prevailing parties on the Complaint and the Cross-complaint. In both the statement of decision and the judgment, the court expressly declined to rule on any section 1717 issue without a noticed motion.[15]

The order granting the Bayses' attorney fees motion reflects that "the Judgment of this court <u>stated</u> that the BAYS[ES] were the prevailing parties — as to each and every cause of action on the Complaint — as well as to each cause of action on the Cross-Complaint" for purposes of Code of Civil Procedure section 1032. (Emphasis in original.) Contrary to the premise of Ashcraft's argument, however, the order does not grant relief *based on the prior award of section 1032 costs*.

Moreover, given the standard to be applied, the court's statement fully supports the ultimate award, since "the court cannot ignore [Code of Civil Procedure section ]1032 . . . for purposes of . . . [section ]1717 fee awards." (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2021) ¶ 17:891, p. 17-192.) We acknowledge (as argued by Ashcraft) that, just because a party is determined to be a prevailing party for purposes of costs under Code of Civil Procedure section 1032, that party is "not necessarily" the prevailing party for purposes of an award of attorney fees on a contract under section 1717. (*Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 438, fn. 1; see *Goodman v. Lozano* (2010) 47 Cal.4th 1327,

---

15    The court also required that the parties meet and confer before filing any such motion for attorney fees.

15

1335, fn. 3 [noting differences in definition of "prevailing party" in the two statutes].) However, "generally no award of attorney fees as 'an element of the costs of suit' under . . . section 1717 can be made to a litigant who has not also been determined to be the prevailing party under [Code of Civil Procedure] section 1032." (*Zintel Holdings*, at p. 438, fn. 1; see *Goodman*, at pp. 1335, fn. 3, 1338-1339.) Here, before awarding section 1717 fees to the Bayses, the court did nothing more than *state* that it had already made a Code of Civil Procedure section 1032 costs award in favor of the Bayses.

Ashcraft next criticizes the trial court's legal analysis for failing to compare "all of the specific adjudications it made in . . . the Judgment . . . with the parties' litigation objectives." (See *Hsu, supra*, 9 Cal.4th at p. 877, quoted *ante*.) Ashcraft assumes the court failed to analyze the issue as required by *Hsu* based solely on the fact that, in the order granting the motion, the court only gave three examples of how Ashcraft did not meet her litigation objectives and the Bayses did.[16] Ashcraft's criticism is unfounded.

The judge who ruled on the Bayses' motion was the same judge who tried the case. (See *In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 578 [in analyzing an exercise of discretion under § 1717, consideration should be given to the fact that the judge "has handled th[e] litigation from its commencement"].) In addition, the issues were fully briefed by the parties,

---

16    In its order, the court "note[d]": "ASHCRAFT's Notice of Default was declared void and was cancelled"; Ashcraft sought $232,954.06, but was awarded "a mere $24,868.32 on the note, roughly 11% of the amount sought"; and rather than "the $50,000.00 in interest ASHCRAFT sought," the court awarded "a mere $3.62 in interest — per day," which the court calculated to be $1,371.98 or "less than 3% of the amount sought."

16

both at the start of the trial and before closing arguments.[17]  In any event, in section 1717 proceedings, "[t]he court [i]s not required to explain its rationale for the final fee award absent a request for a statement of decision" (*Tobacco Cases I*, at p. 589)—which Ashcraft did not make here.  We presume the court's order is correct (*Ketchum, supra*, 24 Cal.4th at p. 1140), and Ashcraft's desire—expressed for the first time on appeal—that the court make detailed findings is not an affirmative showing of reversible error.[18]  Contrary to Ashcraft's unfounded speculation as to the trial court's reasoning and consistent with our presumption on appeal, "[w]e have no reason to doubt that the superior court conducted an independent assessment of the evidence presented." (*Ibid.*)

For the foregoing reasons, Ashcraft did not meet her burden of establishing an abuse of discretion based on a prejudicial error of law.

---

[17]    However, we do not know what counsel argued either during the closing arguments or at the hearing on the Bayses' motion, since Ashcraft did not provide a complete reporter's transcript or a settled statement of these proceedings.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1141 (*Ketchum*) [even without a court reporter, Ashcraft should have augmented the record with a settled statement].)  " 'It is the burden of the party challenging the fee award on appeal to provide an adequate record to assess error.' " (*Id.* at pp. 1140-1141.)

[18]    In this regard, Ashcraft compares seven examples of the "Relief the Bays[es] Sought at Trial" with the "Adjudication in [the] Judgment" and two examples of the "Relief Ms. Ashcraft Sought at Trial" with the "Adjudication in [the] Judgment."  (Bolding and emphasis omitted.)  Ashcraft's presentation is nothing more than her suggestion that these examples—at least three of which strongly favor the Bayses—are more persuasive than those the trial court "note[d]" in its order.

### b.    *Finding of Prevailing Party*

Suggesting that, had the court "properly compared <u>all</u> its adjudications to the parties' litigation objectives," Ashcraft argues that "the court should have found Ms. Ashcraft to be the prevailing party for purposes of Section 1717" or "at a minimum . . . [made] a determination of no prevailing party."  This argument is nothing more than a substantial evidence contention that, if the court had "properly" weighed the evidence in favor of Ashcraft's position, then the court would have made a different finding.

In support of her position, Ashcraft focuses exclusively on the adjudications and litigation objectives that weighed in her favor.  Such a presentation is not helpful.  Our appellate review for substantial evidence is limited to a determination of whether the " 'necessary findings' " are supported by substantial evidence (*Blickman Turkus*, *supra*, 162 Cal.App.4th at p. 894)—*not*, as argued by Ashcraft, whether the record contains substantial evidence that would support a different finding.  Indeed, in conducting our substantial evidence review, "the evidence most favorable to [the ruling on appeal] must be accepted as true and *conflicting evidence must be disregarded*."  (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 118 (*Campbell*), italics added; accord, *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631 (*Howard*) ["we will look only at the evidence and reasonable inferences supporting the successful party, and *disregard the contrary showing*" (italics added)].)  That is because we determine *only* " 'whether there is any substantial evidence, contradicted or uncontradicted, which will support the [finding actually made].' "  (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571.)

For these reasons, "the appellant is required to provide a summary of *all of the evidence*, not merely his or her own evidence" (*Carrington v.*

18

*Starbucks Corp.* (2018) 30 Cal.App.5th 504, 518, italics added); and, for the evidence that *supports* the challenged finding, the appellant " 'must . . . *show how and why it is insufficient*' " (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738, original italics). Where the appellant fails to make a sufficient presentation on appeal, i.e., " '[w]here a party presents only facts and inferences favorable to his or her position, the "contention that the findings are not supported by substantial evidence may be deemed waived." ' " (*Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 391.) Here, because Ashcraft focuses only on the results at trial that she believes favored her litigation goals (without attempting to establish a lack of substantial evidence to support a finding that the Bayses achieved their litigation goals), Ashcraft forfeited appellate review of this substantial evidence review.

In any event, even if we were to reach the substantial evidence issue (in the context of our review of the ruling for abuse of discretion), the result would be no different. Having independently reviewed the Complaint, the Cross-complaint, the parties' trial briefs, counsel's opening statements, the parties' closing argument briefs, and the statement of decision—and disregarding evidence that supports a finding other than the Bayses are the prevailing parties for purposes of section 1717 (*Campbell, supra,* 32 Cal.3d at p. 118; *Howard, supra*, 72 Cal.App.4th at p. 631)—we would have no difficulty concluding that substantial evidence of the adjudications and litigation objectives supports the court's finding that the Bayses are the prevailing parties. Indeed, the three findings expressly noted in the order granting the Bayses' section 1717 motion set forth at footnote 16, *ante*, combined with the Bayses' litigation goal and adjudication quieting title to the property in their favor, are more than substantial evidence to support the

19

finding that, for purposes of section 1717, the Bayses were the prevailing parties "on the contract."[19]

For the foregoing reasons, Ashcraft did not meet her burden of establishing an abuse of discretion based on a lack of substantial evidence to support the trial court's finding of the prevailing party.

B.    *Claims "on the Contract"*

Ashcraft argues that the trial court erred in awarding section 1717 attorney fees to the Bayses for their attorney's services related to the "tort and non-contract claims." More specifically, she contends that, pursuant to section 1717 and the language of the attorney fees provisions at issue, the Bayses are not entitled to recover attorney fees for professional services related to two specific causes of action in the Complaint: (1) breach of fiduciary duty; and (2) unlawful, unfair, or fraudulent business practices in violation of Business and Professions Code section 17200. She contends that, because these causes of action do not contain contract claims, the mutuality of remedy provision of section 1717—which only applies to an "action on a contract"—is inapplicable. (Citing *Brown Bark*, *supra*, 219 Cal.App.4th 809;

_____

[19]    In briefing and at oral argument, Ashcraft emphasized the opinion *Marina Pacifica Homeowners Assn. v. Southern California Financial Corp.* (2018) 20 Cal.App.5th 191. In *Marina Pacifica*, in exercising its discretion, the trial court found there was no prevailing party for section 1717 purposes. (*Marina Pacifica*, at p. 200.) However, *Marina Pacifica* does not provide guidance *in this case*, since the appellate court merely ruled that, based on the evidence and argument *in that case*, the trial court acted within its discretion in finding there was no prevailing party on the contract. (*Id*. at pp. 202-207.) The appellate court did not suggest that the trial court was required to exercise its discretion the way it did or that the trial court would have abused its discretion had it ruled otherwise.

20

*Moallem v. Coldwell Banker Com. Group* (1994) 25 Cal.App.4th 1827 (*Moallem*).)

As we explain, based on our de novo review, the trial court did not err in concluding that these two causes of action were "on the contract," as that phrase is applied in determining a section 1717 award of attorney fees.

1.    *Law*

Section 1717 was enacted "to establish mutuality of remedy . . . and to prevent the oppressive use of one-sided attorney fees provisions." (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1090-1091; see *Santisas v. Goodin* (1998) 17 Cal.4th 599, 610 ["The primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions."]; *Brown Bark, supra*, 219 Cal.App.4th at p. 820 [§ 1717's " 'only effect is to make an otherwise unilateral right to attorney fees reciprocally binding upon all parties to actions to enforce the contract.' "].) Section 1717, subdivision (a) authorizes awards of attorney fees in " 'any action on a contract.' " (See *Blickman Turkus, supra*, 162 Cal.App.4th at p. 893, fn. 11.)

In this context, "California courts liberally construe the term 'on a contract' "; thus, " ' "[a]s long as the action 'involve[s]' a contract, it is ' "on [the] contract" ' within the meaning of section 1717." ' " (*Yoon v. Cam IX Trust* (2021) 60 Cal.App.5th 388, 393 (*Yoon*), citing and quoting *Blickman Turkus, supra*, 162 Cal.App.4th at p. 894.) "Any action that is based on a contract is an action on that contract *regardless of the relief sought*." (*Brown Bark, supra,* 219 Cal.App.4th at p. 821, italics added.) Because " 'it is irrelevant if the fees were incurred offensively or defensively[,] . . . fees should be awarded to the extent that the action in fact is an action to enforce—or avoid enforcement of—the specific contract.' " (*Yoon*, at p. 393.)

In *Kangarlou v. Progressive Title Co., Inc.* (2005) 128 Cal.App.4th 1174 (*Kangarlou*), the purchaser of a home successfully sued the escrow holder for breach of fiduciary duty and, as the prevailing party, sought section 1717 attorney fees under an attorney fees provision in the escrow contract. (*Id.* at pp. 1176-1177.) Reversing the trial court's denial of the requested fees, the appellate court remanded with directions that the trial court determine an appropriate award. (*Id.* at p. 1180.) Quoting established law from our court, *Kangarlou* instructs: " 'Whether an action is based on contract or tort depends upon the nature of the right sued upon, not the form of the pleading or relief demanded. If based on breach of promise it is contractual; if based on breach of a noncontractual duty it is tortious. [Citation.] If unclear the action will be considered based on contract rather than tort. [Citation.] [¶] In the final analysis we look to the pleading to determine the nature of plaintiff's claim.' " (*Id.* at pp. 1178-1179, quoting *Arthur L. Sachs, Inc. v. City of Oceanside* (1984) 151 Cal.App.3d 315, 322.)

In *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316 (*Kachlon*), for example, the causes of action at issue in the section 1717 proceedings involved a declaration of rights, an injunction, and a ruling quieting title in residential real property. (*Id.* at p. 346.) Despite the equitable nature of this relief, the appellate court concluded that the causes of action were nonetheless " 'on the contract' " for purposes of section 1717, since: (1) the requested declaration was to cancel a promissory note for the purchase of the property; (2) the requested injunction was to enjoin a nonjudicial foreclosure on the deed of trust that secured the promissory note on the property; and (3) the requested clear title was to the property subject to the deed of trust. (*Id.* at pp. 347-348.)

As we introduced *ante*, the trial court abuses its discretion if it applies the wrong law. (*Blickman Turkus, supra*, 162 Cal.App.4th at p. 894.) In this regard, the trial court's determination of the legal basis for an award of attorney fees is a question of law, which we review de novo. (*Mountain Air, supra*, 3 Cal.5th at p. 751.)

   2.     *Analysis*

As required, we first look to the pleadings to determine the nature of the action. (*Kangarlou, supra*, 128 Cal.App.4th at pp. 1178-1179.) A review of the Complaint and the Cross-complaint leads to the inescapable conclusion that the sole purposes of the underlying litigation were to determine (1) whether (and, if so, how much) the Bayses owed Ashcraft on the 2008 promissory note, and (2) whether Ashcraft could foreclose on the deed of trust the Bayses provided to secure their payment of the 2008 promissory note. Thus, for purposes of section 1717, this action appears to be *on a contract* (actually, on two contracts—i.e., the note and the deed of trust). We next turn to the specific causes of action which Ashcraft contends are not on a contract.

In their breach of fiduciary duty cause of action, the Bayses alleged that Ashcraft acted as their "mortgage broker with regard to arranging their loan and owe[d] them a fiduciary duty to act with undivided loyalty *with regard to their loan.*" (Italics added.) In their unfair business practices cause of action, the Bayses alleged that Ashcraft "unlawfully arranged *a usurious loan* to [the Bayses] ('loan-sharking') and then worked to obtain *a Deed of Trust* purportedly allowing [her and FFF] to foreclose upon [the Bayses'] home." (Italics added.) Based on these allegations, under the standards set forth *ante* regarding the application of section 1717 (*Yoon, supra*, 60 Cal.App.5th at p. 393; *Brown Bark, supra,* 219 Cal.App.4th at p. 821;

23

*Blickman Turkus*, *supra*, 162 Cal.App.4th at p. 894), the Bayses' causes of action for breach of fiduciary duty and for unfair business practices are *on a contract*. (See *Kachlon*, *supra*, 168 Cal.App.4th at pp. 346-347.)

In *Yoon, supra,* 60 Cal.App.5th 388, for example, the borrower sued the lender in an attempt to prevent the lender from exercising its nonjudicial foreclosure rights under a deed of trust given to secure payment of the promissory note for the loan. (*Id.* at p. 391.) The parties went to trial on two of the borrower's *tort* causes of action—negligence and fraud. (*Id.* at pp. 391, 393.) The appellate court affirmed the trial court's award of section 1717 attorney fees in favor of the lender, despite no contract claim by the borrower, reasoning: "[The borrower's] tort claims 'directly relate to enforcement of the note through foreclosure,' " since, by his complaint, the borrower "sought to avoid his obligations under the note by making claims [the lender] acted negligently and fraudulently during the foreclosure process." (*Id.* at p. 393.)

Although the prevailing party in the present action (the borrower) is different than in *Yoon*, *supra*, 60 Cal.App.5th 388, we find persuasive the analysis, reasoning, and holding in *Yoon.* As the trial court ruled here, the Bayses' causes of action for breach of fiduciary duty and unfair business practices "pertain to enforcing the contractual rights between the parties as to the Deed of Trust and/or promissory note." Accordingly, the trial court did not err in ruling that these two causes of action "are 'on the contract' " for purposes of section 1717.

We are not persuaded by Ashcraft's argument to the contrary.

Ashcraft correctly cites *Brown Bark*, *supra*, 219 Cal.App.4th at pages 820, 827-829, and *Moallem*, *supra*, 25 Cal.App.4th at pages 1831-1833, for the proposition that tort and other noncontract claims are not subject to section 1717, including its reciprocity provision. However, as we explain,

24

*Brown Bark* and *Moallem* are distinguishable:  In those cases, the tort or other noncontract claims were not "on the contract" for purposes of an application of the reciprocity provision in section 1717, subdivision (a).  By contrast, here (as we just concluded) the Bayses' causes of action for breach of fiduciary duty and unfair business practices are "on the contract" for purposes of section 1717.

In *Moallem*, *supra*, 25 Cal.App.4th 1827, the tenant cross-complained against his real estate agents for breach of contract, negligence, and breach of fiduciary duty.  (*Id*. at pp. 1828-1829.)  The jury returned a verdict in favor of the tenant for negligence and breach of fiduciary duty and in favor of the agents on the claim for breach of the real estate brokerage agreement.  (*Id*. at p. 1830.)  The attorney fee provision in the agreement was unilateral, providing that only the agents could recover attorney fees and only if the claim "related to" the contract.  (*Ibid*.)  The appellate court affirmed the trial court's denial of an award of section 1717 attorney fees to the prevailing party tenant.  (*Moallem*, at p. 1833.)  The attorney fee provision in the agreement was broad enough to include a tort action.  (*Id*. at p. 1831.)  However, the provision was not reciprocal; and since section 1717's reciprocity provision does not apply to tort claims—even tort claims "related to" the contract—the tenant was not entitled to recover his attorney fees on the causes of action for negligence and breach of fiduciary duty.  (*Moallem*, at p. 1833.)  In contrast to the present appeal, in *Moallem* no issue or argument was raised with regard to whether the tort claims were "on the contract" for purposes of an application of the reciprocity provision in section 1717, subdivision (a).  (See *Brown Bark*, *supra*, 219 Cal.App.4th at p. 828 ["Because the claims at issue [in *Moallem*] were not *on the contract*, the plaintiff [tenant] could not rely on section 1717's reciprocity principles to make the

25

unilateral fee provision reciprocal" (italics added)].)

In *Brown Bark*, *supra*, 219 Cal.App.4th 809, the plaintiff lender sued the defendant borrower's former employee and her new corporation in an effort to recover funds that were owed by the former employer on a line of credit that the lender had extended. (*Id.* at p. 814.) Since the new corporation was not a party to the contracts that created the line of credit that was in default, the lender named the new corporation on a successor liability theory in causes of action for breach of contract. (*Ibid.*) The lender also named the former employee and the successor corporation in causes of action for conversion and fraud related to the line of credit. (*Ibid.*) Following trial, the court entered judgment in favor of the former employee and the successor corporation on all three causes of action. (*Ibid.*) The trial court later denied their section 1717 motion for attorney fees under unilateral provisions (to the benefit of the lender) in the contracts evidencing the line of credit. (*Brown Bark*, at p. 814.)

The appellate court affirmed as to the tort claims and reversed as to the breach of contract claims. In ruling that the successor corporation was entitled to a section 1717 fee award on the contract claims, the court reasoned:

> "Civil Code section 1717 makes an otherwise unilateral attorney fee provision reciprocal and entitles a noncontracting party to recover contractual attorney fees when it defeats a contract-based cause of action that would have made the noncontracting party liable for contractual attorney fees had it lost. [The lender] would have recovered its attorney fees if it had prevailed on its successor liability theory against [the successor corporation] *because the line of credit contracts made their fee provisions binding on the contracting parties' successors.* Section 1717 therefore allows [the successor corporation] to recover its attorney fees because it defeated claims for

26

breach of the line of credit contracts that would have
exposed [the successor corporation] to attorney fee liability
had it lost." (*Brown Bark*, *supra*, 219 Cal.App.4th at
pp. 814-815, fn. omitted, italics added.)

By contrast, since "[s]ection 1717 only applies to contract causes of action," the trial court properly denied the successor corporation's fees "on the tort causes of action."[20] (*Brown Bark*, at p. 815.)

With no discussion of the *Brown Bark* court's analysis or the application of section 1717 to noncontract causes of action "on the contract," Ashcraft relies only on the following single statement in the opinion: " 'Section 1717's reciprocity principles . . . make a unilateral attorney fee provision reciprocal only on contract claims; they do not make a unilateral provision reciprocal on tort claims.['] " (Quoting *Brown Bark*, *supra*, 219 Cal.App.4th at p. 828.) However, *unlike the present appeal*, the successor corporation in *Brown Bark* did not argue that it was entitled to recover its attorney fees on the theory that the tort causes of action were "on the contract" for purposes of section 1717's reciprocity provision. For this reason, *Brown Bark*'s generic statement about section 1717 not applying to tort causes of action is neither controlling nor persuasive. (See *B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 23 [" ' "cases are not authority for propositions not considered" ' "].)

---

[20] The appellate court also affirmed the denial of all fees to the former employee. (*Brown Bark*, *supra*, 219 Cal.App.4th at p. 815.) Because she was not a party to the line of credit contracts and the lender did not sue her for breaching those contracts, she never faced potential liability for attorney fees under the contracts. (*Ibid*.) Thus, she could not invoke the reciprocity provision of section 1717 to recover her fees. (*Ibid*.) The ruling as to the former employee in *Brown Bark* does not affect any issue in the present appeal, since (unlike the former employee in *Brown Bark*) the Bayses *were* signatories to the contracts at issue.

For the foregoing reasons, Ashcraft did not meet her burden of establishing that the trial court erred in ruling that the Bayses' causes of action for breach of contract and for unlawful, unfair, or fraudulent business practices in violation of Business and Professions Code section 17200 were " 'on the contract' "—where "the contract" was the note and/or deed of trust associated with Ashcraft's usurious loan to the Bayses.[21]

## III.  DISPOSITION

The December 2019 order granting the Bayses' motion for attorney fees is affirmed.  The Bayses are entitled to their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


IRION, J.

WE CONCUR:



HUFFMAN, Acting P. J.



DO, J.

---

[21]    Because we conclude that the trial court properly awarded the Bayses attorney fees on the two noncontract causes of action at issue, there is no issue as to an allocation of professional services for claims on the contract. Thus, we do not reach Ashcraft's appellate argument that the Bayses failed to present sufficiently detailed time records to allow an allocation of services between the contract and noncontract claims.